## STAMATES v. ANDELMAN et al.

### No. 858.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 5, 1949.

Decided Oct. 28, 1949.

John Alexander, Washington, D. C., for appellant.

Rolland G. Lamensdorf, Washington, D. C., for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

This was a suit for recovery of a balance due on a fur coat allegedly bought by appellant from appellees' store. The action was filed against appellant, Carl Stamates, and his wife. The trial judge exonerated Mrs. Stamates of liability and ordered judgment against Mr. Stamates alone. This appeal was taken by him.

One evening in October, 1946, appellant Stamates was driving downtown on his way to a moving picture accompanied by a Mrs. Hathway, a lady whom he had then known but briefly but who later became his wife. He was at the time married to another lady but estranged from her; three days earlier they had reached a property settlement. As the couple approached their destination, they drew up in front of the Jandel Furs shop, owned by appellees. Mrs. Hathway expressed her admiration of a coat she saw in the window. The shop was closed but still lighted and Stamates, seeing one of the owners, Rendelman, inside, knocked and was admitted. He left his car parked double, in the care of Mrs. Hathway.

From this point on the testimony was marked by sharp conflicts. The evidence, however, would support a finding that the following occurred: That Stamates told Rendelman that he wanted to buy a fur coat for "a girl friend that I am going to

marry;" that Rendelman took a coat from the window priced at $1850, which he agreed to sell to Stamates for $1700; that Stamates told him that because he was having trouble with his then wife, he did not want the account in his name and asked that it be placed in the name of Mrs. Hathway and that Stamates would pay for it; that he would send her in to pick out the lining and the monogram; that they agreed on a deposit of $500 which Stamates would bring in the following day; that a sales slip was made out in the name of Mrs. Hathway, a carbon copy of which was handed to Stamates; that the name Stamates was written in the upper left-hand corner, but the slip was admittedly not signed either by Stamates or by Mrs. Hathway.

A ledger entry which was in evidence revealed that the $500 deposit was made on the following day, but there was no direct evidence as to who paid it. Both Stamates and Mrs. Hathway denied having made the payment. Payments of $100 and $300 were later made by Mrs. Hathway with money she said Stamates supplied her before they were married. Following their marriage no further payments were made. There was also testimony for the plaintiffs that they had never before this transaction had any account in the name of Mrs. Hathway, who was unknown to them until that time. Mrs. Stamates (formerly Mrs. Hathway) testified that while she was sitting in Stamates' car he came out of the store with the coat and placed it in her lap.[1]

Mr. Stamates' testimony was a complete denial of all the essentials of plaintiffs' case. He testified that he did not engage to pay for the fur coat, that he did not select a coat for Mrs. Hathway, that he made no payment or deposit on the coat and did not give Mrs. Hathway any money for that purpose. Similarly, he denied receiving a copy of the sales slip and also denied taking delivery of the coat.

■ Appellant apparently takes the position that this was a purchase by the former Mrs. Hathway for which she alone was responsible. But plaintiffs' case was brought on the theory that the coat was sold directly to Stamates. And there was sufficient evidence to support such claim.

■ Appellant also contends that being for more than $500, the sale was governed by the Uniform Sales Act, Code 1940, 28—1104, and that the claim is unenforceable unless it was shown (1) that the buyer accepted part of the goods contracted to be sold and actually received the same, or (2) that the buyer gave something in earnest to bind the contract or in part payment, or (3) that the buyer signed some note or memorandum in writing of the contract or sale. We think that under the evidentiary situation we have recited, the first of these three issues is decisive of the appeal. There was sufficient evidence upon which to base a finding that there had been an acceptance and receipt of the coat by appellant. If, as he had a right to do, the trial judge believed the testimony of Rendelman, he very properly gave judgment against appellant. For, as our statute says, "The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller."[2] And the facts testified to by Rendelman comprised acceptance within the meaning of Code 28—1104; they amounted to "an assent on the part of the buyer to take existing and identified goods as owner * * *"[3] Moreover, there was evidence that the coat was actually delivered into appellant's hands. Such is the plain effect of the testimony of appellant's wife, that he came out of the shop with it and presented it to her.

Since what we have said disposes of the case adversely to appellant, we need not discuss the matters of part payment or memorandum in writing.

Affirmed.

2. Code 1940, § 28—1308.

3. 1 Williston, Sales (Rev.Ed.) § 75.

1. There was no direct evidence of the exact date of this delivery, but it was obviously some time after the original purchase, and after the alterations on the coat had been completed.